May it please the Court, I am Andy Desimone and I represent Mr. Mitchell. I want to spend my limited time this morning on the erroneous application of the assault enhancement. Under the plain text of that enhancement, the government had to prove that Mr. Mitchell assaulted an inmate, that he knew the person he assaulted was an officer, and that the assault itself created a substantial risk of serious bodily injury. I am going to focus on three of the District Court's errors as to the assault enhancement. First, the District Court applied the wrong legal test. Second, the government failed to prove that any assault created a substantial risk of serious bodily injury. And third, the government failed to prove that there was an assault in the first place. So first, the District Court incorrectly focused on Mr. Mitchell's overall conduct in creating a dangerous situation, rather than on the more narrow question of whether he committed an assault that in turn created a substantial risk of serious bodily injury, meaning a considerable or important risk of injury involving extreme pain, protracted impairment of a bodily member, or requiring surgery or hospitalization. So here, the court said, quote, the exigent circumstances, the emergency that was going on there, the danger to all involved, the public and law enforcement is at its highest level with him. That's JA-22. The court continued, I mean there were a half dozen police officers there. There's a car operating with an intoxicated, addicted person with a firearm who's a felon in the middle of the street. That's the scene you create for all these national disasters. The court continued, this is his fault, JA-23. These were the conditions that he created, JA-25. The officers don't know whether they're going to get killed right then and there. That's JA-24. And he shouldn't profit from the fact that the officers diffused the situation. That's 25. And when he actually overruled the objection, the court said, defendant's behavior and conduct created a substantial risk of serious bodily injury. Not that a supposed assault created that substantial risk. So we don't dispute that Mr. Mitchell created a dangerous situation by passing out at the wheel with a gun in his hand. But that is just not the question under the plain text of the assault enhancement. The court had to decide the much more narrow question. We're also not saying the district court could never consider those circumstances, right? But the proper time and place to consider them was under 3553A, after it had already calculated the guidelines, not when deciding whether the assault enhancement even applied. But in addition to that legal error, the government just did not prove that it was more likely than not that any assault created a substantial risk of serious bodily injury. So even if we assume for a second that there was an assault with a strike to the officer's face, there just was no serious risk of serious bodily injury from that assault. Remember, Mr. Mitchell was sitting down in a car with limited range of motion. He was surrounded by eight officers. He was just being roused from unconsciousness when he flailed his arms. And then you can look at the reaction of the officer. He actually strike him numerous times? Well, the PSR says that there were two strikes to the face and a couple to the arm. The officer, when he testifies on J37, testifies there was one strike to the face. We objected to the PSR and there was the testimony. But I think that goes to sort of the assault question. This is a question of fact, right? And we reviewed that for clear error? Correct. Correct. But if you look after the strike, the officer continued to try to pull Mr. Mitchell out of the car. He did not cry out or cover his face. He did cover his face. He says, I covered my face and he kept hitting my arm. Right? I think that's correct. Yeah. I don't remember the cover face. He hit him once or twice. I think the record in front of us says twice. Hit him twice in the head. The officer covers his head with his arm. Mr. Mitchell keeps hitting his arm and finally has to be tased. Well the thing is, the assault itself only happens over the course of about two seconds. This is at the four minute mark of the video. At that point, the officer says on J38, he clasps his hands on the wheel. So that's the remainder of the situation. He's not striking the officers. Okay. Mr. DeSimone, I don't mean to interrupt your discussion of the facts, but it seems to me you've left out something that you addressed in your brief and I'm wondering whether you're abandoning that or not. In your brief, you talk about the procedural error of the district court's failure to explain its decision, its failure to make the necessary findings, its reasoning. Are you abandoning that now and just arguing clear error? Because there's a different standard of review that applies to the procedural error than the clear error on the factual resolution of the actual assault itself. So could you clarify that for us? Yes, Your Honor. Of course, we're not abandoning that error. I think at baseline, this case would have to go back for resentencing, especially under United States v. Bolden, especially as to the second. You cannot even look to the PSR to find a finding of facilitation. And the district court certainly didn't make one. And it's unclear how there could be a facilitation. So I do think at baseline it has to go back for resentencing. All we're saying is that at resentencing, the government can't supplement the evidentiary record under United States v. Parker from 1994. So we're stuck with the facts as they are. And so my argument to you is that on these facts, there was not evidence of a substantial risk of serious bodily injury or even an assault. So I do think you do have to reach that question because it's sort of a higher level of relief that we're asking for. We're asking for remand for resentencing without the enhancements. But I hope that addressed your question. Well, I guess what I'm saying, don't we have to look? If we find that the district court did not adequately explain its reasoning, then we can only affirm if the record compels the conclusion that the requirements were satisfied. Isn't that correct? Yeah. And I guess what I'm saying is that the record does the opposite of that. The record compels the opposite conclusion, that there was no assault and that there was no substantial risk of serious bodily injury. You know, the officer was not hurt at all. It's not in the PSR. It's not in the testimony. It's not in the video. That's a standard way of the government showing a substantial risk. But I thought the standard is a potential risk, not that he necessarily had to be hurt. It's the I think the word potential is a little dangerous because it's a substantial risk. It's not a potential just would mean any risk. But we're not to this. The plain text of this enhancement talks about a substantial risk of serious bodily injury. So a substantial, you know, just from a dictionary definition would mean considerable or important. And here you've got someone who's sitting down, who is in a car, who's surrounded by eight officers, who has a limited range of motion, who's just being roused from unconsciousness. So the potential, you know, I think we have to go. It's actually more than that. It's was there a considerable risk that he would do such a high level of injury to the officer? Do you think the facts that you just laid out distinguish this from that? There the officer was hit a couple of times in the head and like here and that was it. Yeah. So there are a couple of things. The defendant was fully conscious, right? The defendant was standing up, was right in front of the officer, and it was a single officer, right? Not eight. So the defendant had full range of motion standing right in front of the officer, squared up, and unleashed a right hook hitting the officer's head. And then he tries to hit the officer's head again with a left hook. So he was obviously trying to hurt the officer, and he did hurt the officer, right? The officer suffered a sore neck and scraped knees. You know, not in themselves serious by the injury, but you usually have some injury from which you then infer that there was the intent. You're saying the court should look at all the facts and circumstances and side from that, not just these few seconds, look at the totality. No, because you're asking us to disagree with the district court on this fact about whether he was intending to hurt him. And in the Seventh Circuit, we can say he was intending, but here we can't. Well, I do think it's important to look at the plain text. I mean, this is a textual argument because the plain text of the guideline talks about that the assault itself has to create the substantial risk of serious bodily injury. And so the assault itself, and this is from the PSR on describing the offense, and that's 81 to 82 of the JA and 94 where the probation officer responds. The assault itself is identified as the strike or strikes to the face. And so it's that couple of seconds that really matters. Does that couple of seconds in the circumstances which existed at that time, did that create a substantial risk? And I do want to back up a little bit to the supposed assault because there does have to be an intentional strike, not a reflexive strike. And he had to know it was an officer. So here it happens right around the four-minute mark of the video. If you look just in those couple seconds, at that time, the officers were rousing Mr. Mitchell from unconsciousness. And one of them even said, quote, keep in mind he's incoherent. Keep in mind, end quote. That's a very important fact because it's the on-the-scene contemporaneous understanding of an officer who's in the thick of it. Also at the time of the strike, the officers had only announced they were police one time, right? It was only after the strike, after that four-minute mark. Did the district court note all the blue lights, that there was a police cruiser parked in front where Mr. Mitchell could see it and the blue lights were activated? That's absolutely right. And there were uniforms, right? But uniforms and flashing lights mean nothing to an unconscious person. And he was unconscious until... But when they pulled him out of the car, he said, what did I do? Well, he didn't say that. The first thing he said was, what's going on? And then he says, what did I do? So, I mean, that's 50 seconds later. And it's still, you know, the first thing he says is, what's going on? Like, he still doesn't really know what's going on. It was not prolonged. Again, this is just a couple seconds because, again, after it, on J-38, the officer says he clasped his hands. Counsel, let me interrupt you because you've got less, fewer than 10 seconds. Are you addressing the forward level enhancement at all? If you could give me a... Are you resting on your brief, I guess, on that? A second. I would have two points to make about it, but I can save that for rebuttal or do it now? You can make your points. Okay, thank you. So, I think it's really to juxtapose Jenkins, right? Because Jenkins, you've got a report of someone firing a weapon in downtown Charleston, South Carolina, a city. And then the police go down there. They find the person who matches the description. The person has a gun in one hand, cocaine in the other, and wrestles with the officers. Again, this case is totally different. We talked about how he was unconscious, gun in his hand, cocaine in his pocket. This is out in the country in a rural area. I was going to ask that. So, in Jenkins and then also in Bolden, on a facilitation issue, there is this question of the environment or the atmosphere. Yeah. Does that make a difference? Yeah. I mean, to me, it's a completely different atmosphere here, right? No suggestion that he could be in Bolden or to protect it from no one. There was nobody around. I thought his attorney in the district court said he needed a gun for protection in Kinston at night. That was for his job as a truck driver. So, why wouldn't he also need it for protection as a man with three grams of cocaine in his pocket? I mean, I think that's a separate question, right? That's the separate question of whether it facilitated or did it just have to do with his job as a truck driver? I think the problem here for practitioners, right, just practically, is if it's affirmed here, practitioners will have very little guidance as to when it should and when it should not apply. What did the district court say about this four-level enhancement? Very, very little. All he says is that the facts support something like it was supported. It made a conclusion. Yeah, just a conclusion. We don't know his thinking, which, I guess, again, goes to the error under Bolden, right? So, I think it would have to go back for the district court if this court doesn't find, you know, if it finds sufficient potential evidence, it would have to go back so that this court has something to review. Thank you. Thank you. We'll hear from the government. Hey, please, the court. The district court's ruling in this case was based on a lengthy hearing and developed factual record. So, those findings of facts were not clearly erroneous. I'd like to also start with the assault. First, the court did find that the defendant's behavior and conduct created a substantial risk of serious bodily injury here. And I want to be specific about what that behavior and conduct was. Specifically, directing the court to page 37 and 38 of the record, the officer who was actually struck in the face testified and was subject to cross-examination during the hearing. And what he testified to is that he was struck in the face while he was in the vehicle. And he also clarified that he basically had his upper body in the vehicle, that he was struck in the face, and he actually fell forward and hit his face and then had to throw his arm up in order to protect himself and was struck again indicated that he had told multiple times, he said in his testimony, that he was saying, please, that the defendant stared at him. And then that's when the assault occurred. So, let me ask the question regarding the procedural sufficiency. This is what, you know, frankly is troubling me in this case. I mean, you know, there's definitely evidence of the assault that we don't have any, it seems to me, any explanation by the district court on what it relied in order to reach its conclusions. And I'll be asking you that again with regard to the four-level enhancement, which I think is totally devoid of any explanation. But even with regard to the assault, we don't really have any idea of what the district court was relying on. Wasn't he essentially just stating his conclusion? And it seems to me that then maybe you have a problem under our case law like Wilkerson that says that we can't even get to the issue of substantive reasonableness before we know exactly what the district court was talking about in reaching the conclusion. So, how do we get there in this case to your position? Thank you, Your Honor. So, I would point out the court did make a ruling here on page 53 of the record. The court also adopted the findings of the pre-sentence report, which found that the officer was struck in the face by the defendant, that it was an assault, and that the enhancement should apply. I would also point out that the court had a really developed factual record in this case, which I think distinguishes it from some of the other cases, and particularly the Bolden case that was cited by the, and I know that goes to the other issue, but cited by opposing counsel. The court heard testimony from two witnesses who were at the scene. The court had the video in of those witnesses during the hearing itself. It was clear that the court was clued into what the issues were. They were laid out by the parties during the hearing and in the objections, and the court clearly took interest in that and asked questions that were pertinent to those issues that were raised. So, what the court had before was an officer testifying that he said police. The defendant stared at him and then punched him in the face and then continued to try to assault him, punch him, and struggle with him as they tried to pull him out of the vehicle. And there was, you know, again, significant evidence that the defendant knew that it was a law enforcement officer. There were flashing lights clearly in his frame of view. You can see that in the video. The officers also testified to it. There were a number of officers on scene. You can hear them yelling police several times throughout the video, and they were in uniform. This is not a situation where we have... What about this issue that he was incoherent? Your Honor, I think here there was testimony that he looked directly at the police officer and then punched him in the face, and the standard here is clearly erroneous. So, the court, in determining that the enhancement applied, made that finding that it was a knowing assault, that he knew he was striking a police officer. And that was based on, again, a very developed factual record. And as to the sort of third element of this, which is the substantial risk of serious bodily injury, the testimony was that there was a punch to the face, that the officer actually fell forward and hit himself a little bit. There was no testimony as to injury, but injury is not a requirement. It's a serious... Sorry, a substantial risk of serious bodily injury. We don't have to actually show that there was an injury. And a punch to the face, as the Seventh Circuit noted in Alexander, even one blow to the face could be enough to create that substantial risk of serious bodily injury. Obviously, the head contains the brain, eyes, lots of vital organs. And so, a serious punch to the face could create that substantial risk. And I would also point this court to its unpublished decisions in Mile and Cooper, which also deal with cases where somebody punched an officer, and this court upheld the application of that enhancement. I'll move then to the facilitation, unless the court has any more questions on the assault. The standard is that the another felony offense, in this case, possession of cocaine. I would just point the court to the full factual record here, which was that the firearm was stolen, loaded in the defendant's hand, sitting on his lap. But what about the connection to the cocaine? Where's the evidence of connection to the cocaine? And see, that's just what's bothering me, maybe about the district court's failing to explain anything, because maybe there was a connection. But it seems to me you've got mere proximity in this case, and nothing more. I think there is more than proximity here. Again, and I think the fact that the firearm is stolen and loaded, the fact that it's late at night, it's on a rural road, as defense counsel in the sentencing pointed out, Kinston at night, that was his explanation for why the defendant had a firearm on him. So, it stands to reason that having a firearm could be necessary to facilitate... That's just total speculation, though, isn't it? And again, this goes to why couldn't the district court have told us what constituted the connection? Maybe it's what you say, but do we have to... The case law says we've got to find that the evidence compels the conclusion in order to uphold the district court in absence of any explanation from the district court. And here there's no explanation. There's simply a recitation of a conclusion. And so, how does the record compel the conclusion that he was using the firearm in connection with the cocaine, which was in his pocket, and he was unconscious, slumped over the wheel? I think, as this court has noted, firearms and guns, when they go together, there's sort of an interconnected... And that is not just in the context where there is drug trafficking evidence, but also in the context where they're possessed together. And I think, again, the full range of circumstances here... That's not always the case, right? It's often when, say, there's a warrant to search a home and the police find a gun and they find drugs. If those aren't in the same location or there's not some reason to think they go together, we've sometimes said that's not enough. In the cases where there's drugs and a gun on the same person going into the public sphere, we've said in numerous cases that you can infer a connection there because someone would take a gun with them to embolden them or protect their drugs in public. And we've said that in Woods, unpublished, and in Jenkins, the published case, etc. But there's a distinction in what kind of proximity and when proximity matters, isn't there? I agree, Your Honor. But I think here, there's definitely proximity. I mean, the gun is literally laying on top of where the drugs are in the defendant's pocket. The gun is, again, loaded. It's ready. It's accessible for use. And then I think I would also point to this court, how is he using the gun? Because there's no facts from the district judge below, how are we to say that it was used to embolden or protect when he's in the middle of a, on a rural road, no one's around, and they're arguing incoherent? For the same reason that the defense argued, well, the defense sort of explained his possession of a firearm in Kinston at night, you know, in reference to him being a truck driver. And here, by the way, he's not in his truck. He's in his personal vehicle. And, but he's still, he's carrying the firearm, and it's to embolden and protect the drugs or to embolden and protect him as he's out in the world carrying that high value item. And I would also point the court to this. Is there anything in the record as to what the value of the drugs was? No, there's not, Your Honor. Okay. And the record doesn't really even specify whether it was crack or powdered cocaine. I mean, isn't there some confusion there? You're correct, Your Honor. It does not specify as to which it was. I think there was some testimony that it appeared to be crack cocaine by one of the officers. What is the difference? And this is, again, goes to, I don't mean to beat the dead point, but it goes to the fact the court didn't tell us what it was relying on. I understand, Your Honor. I think, though, that the PSR identifies it as three grams of cocaine. That fact was not objected to. And the court, the district court did adopt the findings of the PSR when it made its ruling on pages 57 to 58. I would also point the court to its own unpublished decision in United States v. Maddox. That was a case where the defendant had a gun and a small quantity of drugs on the floorboard of the car. Then he tried to escape. And the court basically said, under those circumstances, that it strains credulity to think that those two things are not related, given the circumstances where they're found. But in Bolden, this court said that the potential for facilitation is so obvious that the court may confidently assume that the district court's fact-finding role. So don't we have to find it is so obvious? I think it's as obvious here as it was in Maddox. And I would also point the court to the fact that I think Bolden is a very different case and a helpful sort of contrast to the case we have here. In Bolden, the PSR had found that the facilitation was in furtherance of kidnapping. The district court rejected that because there wasn't enough evidence to see that the defendant's conduct met the specific intent standard for kidnapping. And so the court, just at sentencing, made the decision that because the defendant also was in possession of a small amount of cocaine in the same room in a residence, that it would apply the facilitation just based on the cocaine. That wasn't part of the PSR. The parties didn't have a chance to address it in their sentencing memos. The defendant didn't have a chance to object to that. And also, the court pointed out, well, in this case, we don't have what we had in Jenkins, which is someone out in the world with guns and a drug. We have drugs and a gun that happened to be in the same room as the defendant. And the district court didn't know, you know, didn't explain at all how those things could be related, whereas it's much more clear. It's, you know, again, strains credulity not to see how they're related in the context where someone is out in the world in a car with both of those things right next to each other. And if the court has no further questions on that, I would just ask the court to affirm. We'll hear from counsel on rebuttal. Brief rebuttal. Thank you, Your Honor. Just on this incoherent question, it's uncontroverted that up until the time they started screaming at him, you know, yelling at him to try to wake him up, he wasn't incoherent. He was unconscious. He was unconscious this entire time until 10 seconds before he flailed his arms. And why was he incoherent? Because at this point, right, and we also have to throw in he's intoxicated or high, and he's being roused from unconsciousness, probably with a blank stare on his face, doesn't know what's going on even 50 seconds later. But at this time, right, he is just coming out of total unconsciousness. And so that's why we say incoherent. You know, the district court's ruling is on page 53 of the J.A., and it's just absolute bare bones, as Judge Keenan pointed out. And it just puts this court in a difficult position because there's nothing to review. What about the government's argument that the judge was very active during the hearing and questioning and that discussion? Should we consider a full transcript or just the ruling? Well, sure, but I just don't think it goes to the, it doesn't go to the material points. And as to the four level in connection with, again, we're just at sea as to whether and how he thought there was a facilitation. I can't see a possibility of facilitation here. Do you agree that he accepted the PSR? Do you agree with the government on that? He did adopt the findings of the PSR. But again, in the PSR, there are no findings about facilitation, so it can't substitute in terms of the four level. Now, as to the assault enhancement, there is the level of the, you know, there's the language of the assault enhancement in the PSR itself. He adopted that. But again, we objected to all those paragraphs about the assault, and we brought it forward. We put testimony on. And so at that point, it's the district court's duty to make findings, and the district court did not do that. So under Parker, the United States cannot supplement its evidentiary record on remand. We ask that this court vacate and remand for resentencing without the enhancements. Thank you for your time. We'll come down and greet counsel, but I'll ask the deputy to go ahead and adjourn court. Thank you. This honorable court stands adjourned sine die, God save the United States and this honorable court.
judges: Allison J. Rushing, DeAndrea Gist Benjamin, Barbara Milano Keenan